UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

GEORGE MEDINA, an individual; and ARACELI URBINA VIVEROS, an individual,

Plaintiffs,

v.

CITY OF SAN DIEGO, a municipality; OFFICER NOAH MCLEMORE; SCOTT WAHL, an individual, and DOES 1-50, inclusive,

Defendants.

Case No.: 26-cv-2255-GPC-MSB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

**[Dkt. No. 9.]**

Before the Court is Defendants' motion to dismiss the first amended complaint. (Dkt. No. 9.) An opposition and reply were filed. (Dkt. Nos. 11, 12.) A hearing was held on July 17, 2026. (Dkt. No. 13.) Based on the parties' briefs, and hearing oral argument, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss.

/ / /

/ / /

## Background

On May 7, 2026, Plaintiffs George Medina ("Mr. Medina") and Araceli Urbina Viveros ("Ms. Urbina Viveros") filed a 42 U.S.C. § 1983 civil rights complaint against Defendants City of San Diego ("the City"), Officer Noah McLemore ("McLemore"), Scott Wahl ("Wahl" or "Chief Wahl"), Chief of the San Diego Police Department ("SDPD"), and Doe Defendants 1-50 for violations of their constitutional rights and related state law claims. (Dkt. No. 7, FAC.) The FAC alleges the SDPD established a specialized bicycle enforcement unit known as the Gaslamp Enforcement Team ("Bike Team") whose mission is to "maintain peace and order," "ensure the safety and security of visitors," and provide "quality police services." (*Id.* ¶ 43.)

**A. George Medina**

Around 12:30 a.m. on July 19, 2025, Mr. Medina was walking in the Gaslamp Quarter and briefly stopped to speak with a friend on the sidewalk. (Dkt. No. 7, FAC ¶¶ 12, 84.) As he was leaving the area, about three Involved Officer Defendants[1], which include Defendant McLemore, without warning or commands, rushed and violently tackled Plaintiff to the ground. (Dkt. No. 7, FAC ¶¶ 8, 13, 14.) He fell face-first onto the ground and within seconds, additional Officer Defendants came upon him, forming a circle around his body as he lay pinned down. (*Id.* ¶ 15.) Mr. Medina did not fight back, did not try to flee and did not strike or threaten any officer. (*Id.* ¶ 16.) Even though he complied, the situation escalated and one Involved Officer Defendant struck him in the face. (*Id.* ¶¶ 17, 18.)

Then the three Involved Officer Defendants flipped Mr. Medina onto his stomach and one Involved Officer Defendant pressed his knee directly into his back and pressed

---

[1] The FAC explains that "Involved Officer Defendants" refers to Bike Team officers Defendant McLemore and DOES 1-50. (Dkt. No. 7, FAC 8.)

him down in the ground in a prone-restraint position. (*Id.* ¶ 19.) A second Involved Officer Defendant climbed onto his back and pressed both of his knees into Mr. Medina's back at the same time. (*Id.* ¶ 20.) Two additional bicycle Involved Officer Defendants arrived and used their bikes to form a barrier around the scene while force was being applied. (*Id.* ¶ 21.) Even though Mr. Medina was not moving or actively resisting, the Involved Officer Defendants remained on top of him driving their knees and body weight into his back while face down. (*Id.* ¶ 21.) Even though he was immobilized underneath multiple Involved Officer Defendants, he was sprayed with chemical irritants including pepper spray. (*Id.* ¶ 22.) The body weight of the Involved Officer Defendants caused a burning sensation across Mr. Medina's face and into his eyes and he struggled to breathe. (*Id.* ¶¶ 22, 23.) As the scene became chaotic, the Involved Officer Defendants used pepper spray towards the civilians who had gathered nearby and one woman was pushed to the ground. (*Id.* ¶ 24.) The Involved Officer Defendants eventually placed Mr. Medina under arrest and transported him from the scene. (*Id.* ¶ 26.) He required immediate hospitalization due to the injuries inflicted by them. (*Id.*) During the incident, numerous officers and supervisory officers stood and watched the escalation of force despite Mr. Medina's inability to resist the Involved Officer Defendants. (*Id.* ¶ 27.) Mr. Medina claims the Involved Officer Defendants, including other supervisory officers, failed to ensure proper force was used during the incident; instead, they escalated the use of force in contravention to SDPD's training and California's POST[2] standards. (*Id.*) Criminal charges were filed against Mr. Mr. Medina but they were later dismissed by the District Attorney. (*Id.* ¶ 28.) He claims he suffered serious physical injuries, including broken ribs, facial and bodily pain, pepper-spray exposure, difficulty breathing, hospitalization, humiliation, emotional distress and violation of his constitutional rights.

---

[2] Peace Officer Standards and Training.

(*Id.* ¶ 29.) He asserts he continues to experience physical and psychological effects from the assault. (*Id.*)

**B. Araceli Urbina Viveros**

During the incident, Ms. Urbina Viveros witnessed the Involved Officer Defendants tackle Mr. Medina to the ground. (*Id.* ¶ 30.) She saw Involved Officer Defendants striking Mr. Medina and forcing his head into the pavement even though he appeared restrained and compliant. (*Id.* ¶ 31.) Shocked by what she was seeing, she took out her phone to record. (*Id.*) She did not aggressively approach any Involved Officer Defendants, did not touch any Involved Officer Defendants, did not touch Mr. Medina, did not obstruct any Involved Officer Defendants' movement and did not interfere with any police activity. (*Id.* ¶ 32.) As she began to record the incident, an Involved Officer Defendant forcefully shoved her to the ground which caused her phone to fall out of her hand and sent her palms and knees onto the pavement. (*Id.* ¶ 34.) When she tried to stand, a second Involved Officer Defendant pushed her back down again sending the message that she could not record the incident. (*Id.* ¶ 35.) Meanwhile, Involved Officer Defendants used pepper spray toward civilians in the area which further escalated the situation. (*Id.* ¶ 36.) Ms. Urbina Viveros suffered bruising to her palms, arms and feet, physical pain and lasting emotional trauma. (*Id.* ¶ 38.)

Mr. Medina alleges claims of unlawful seizure/false arrest and excessive force under the Fourth Amendment against Defendant Officer McLemore and Doe Defendants 1-50. (*Id.* ¶¶ 68-80.) Ms. Urbina Viveros alleges claims of excessive force under the Fourth Amendment and retaliation/interference under the First Amendment against Defendant Officer McLemore and Doe Defendants 1-50. (*Id.* ¶¶ 81-98.) Both Mr. Medina and Ms. Urbina Viveros allege *Monell*[3] liability against the City of San Diego

---

[3] *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

and supervisory liability against Defendant Chief of Police Wahl under 42 U.S.C. § 1983. (*Id.* ¶¶ 99-132.) They also allege violations of the Bane Act pursuant to California Civil Code section 52.1 and intentional infliction of emotional distress against all Defendants. (*Id.* ¶¶ 133-46.) On May 21, 2026, Defendants filed the instant motion to dismiss the first amended complaint which is fully briefed. (Dkt. Nos. 9, 11, 12.)

## Discussion

### A. Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires the Court to dismiss claims that fail to establish a cognizable legal theory or do not allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). Under Rule 8(a)(2) a complaint must contain "a short and plain statement of the claim which entitles the pleader to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but it must provide allegations that raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. While the plausibility standard is not a probability test, it does require more than a mere possibility the defendant acted unlawfully. *Id.* at 556. "When evaluating a Rule 12(b)(6) motion, the Court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (citation omitted).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**B. Doe Defendants**

Defendants argue that the allegations against Does 1-50 are insufficiently pled because Plaintiffs do not make allegations as to which Doe Defendant was involved in what conduct; rather, Plaintiffs conflate the actions of numerous Doe Defendants. (Dkt. No. 9-1 at 3-5.[4]) Plaintiffs argue that they have sufficiently alleged the conduct of the Involved Officer Defendants against Mr. Medina and Ms. Urbina Viveros but also assert that they "can amend to assign Doe numbers to each functional role." (Dkt. No 11 at 15.)

Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"

---

[4] Page numbers are based on the CM/ECF pagination.

Fed. R. Civ. P. 8(a)(2). The "short and plain statement" required by Rule 8 "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 346 (2005) (internal quotation marks omitted); *Merritt v. Countrywide Fin. Corp*., 759 F.3d 1023, 1033 (9th Cir. 2014) (under Rule 8, "a plaintiff need only plead sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively, and the factual allegations that are taken as true must plausibly suggest an entitlement to relief") (internal quotation marks omitted).

Although the Ninth Circuit disfavors the use of "John Doe" to identify a defendant, in certain instances where the defendants' identities are not known prior to filing the action, an action should not be dismissed without giving the plaintiffs "an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Even though the identity of Doe Defendants may not be known, the complaint must allege facts to state a claim against them. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) ("The more substantive question we must resolve is whether the district court's dismissal of the complaint against Doe was appropriate because, even if Doe's identity is discovered, the complaint would have to be dismissed on other grounds.")

Here, the FAC explains that "Involved Officer Defendants" refers to Defendant McClemore and Does 1-50, (Dkt. No. 7, FAC ¶ 8), and throughout the FAC references "Involved Officer Defendants" or "one Involved Officer Defendant" or a "second Involved Officer Defendant" without differentiating which Involved Officer Defendant did what. (*See* Dkt. No. 7, FAC ¶¶ 19, 20, 24, 26.) Because Plaintiffs have not identified which Involved Officer Defendant was involved with what conduct and generally lumps them together, Does 1-50 do not have "fair notice" of what is alleged against them. *See*

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1059 (9th Cir. 2011) (to satisfy Rule 8(a), a complaint must be written with sufficient clarity and organization such that the defendant would have no difficulty responding to the claims); *Savage v. City of Corona*, Case No. EDCV 24-97-KK-SPx, 2024 WL 2104595, at * 3 (C.D. Cal. Apr. 1, 2024) (rejecting defendant argument that the complaint failed to provide Doe Defendants with fair notice of the claims against them because “the Complaint identifies defendants Does 1 through 6 as the Corona Police Department officers involved in the December 9, 2022 incident.”)

The FAC also provides detailed allegations as to specific acts by these Involved Officer Defendants and include “the officers who initially rushed and tackled Plaintiff Mr. Medina; the officer who struck Plaintiff Mr. Medina in the face as he hit the ground; the officer who first placed a knee into Plaintiff Mr. Medina’s back while he was prone; the officer who climbed onto Plaintiff Mr. Medina’s back and applied additional body-weight and knee pressure; the bicycle officers who formed a barrier around the force scene; the officer who deployed chemical spray while Plaintiff Mr. Medina was pinned; the officer who shoved Plaintiff Ms. Urbina Viveros to the ground; the officer who pushed her down again as she attempted to stand; and on-scene supervisory officers who observed the force, had a realistic opportunity to intervene, and failed to do so.” (*Id.* ¶ 6.) Plaintiffs admit they are able to assign Doe numbers to each functional role and to the extent they are able to differentiate the conduct of each Involved Officer Defendant, Plaintiffs are granted leave to file a second amended complaint. Accordingly, the Court GRANTS Defendants’ motion to dismiss Does 1-50 with leave to amend.

**C. *Monell* Liability – Fifth Cause of Action Against the City**

First, Defendants claim that Plaintiffs improperly plead *Monell* liability because they do not allege an “extension of liability against the City for their other federal causes of action”; rather, they allege a claim “Against the City and DOES 1-50, inclusive.”

(Dkt. No. 9-1, Opp. ¶ 13.) Plaintiffs respond that they seek to impose liability against the City because its policies, custom, training, supervision and discipline failures caused the constitutional violations against Mr. Medina and Ms. Urbina Viveros and can amend the heading to clarify the *Monell* claim is against the City. (Dkt. No. 11 at 20.)

Contrary to Defendants' argument, Plaintiffs' *Monell* claim is alleged against the City based on the conduct of its Officers when they allegedly violated Plaintiffs' constitutional rights under the First and Fourteenth Amendments. (Dkt. No. 7, FAC ¶¶ 100, 101.) Plaintiffs agree that *Monell* claim is only against the City and is amenable to modify the heading of the *Monell* cause of action to reflect the claim is against the City and not DOES 1-50. Thus, Plaintiffs shall amend the heading to remove DOES 1-50 as defendants on the *Monell* claim.

Second, Defendants summarily contend that the *Monell* claim fails because Plaintiffs have not alleged an underlying constitutional violation based on the conduct of the City's employees. (Dkt. No. 9-1, Opp at ¶¶ 14, 15.) Plaintiffs disagree arguing they have alleged constitutional violations in the first through fourth causes of actions for unlawful seizure/false arrest, excessive force and retaliation/interference with recording. (Dkt. No. 11 at 20.)

Local governments "can be sued directly under [section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). While municipalities, their agencies and their supervisory personnel cannot be held liable under § 1983 on any theory of respondeat superior or vicarious liability, they can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs. *Id.* at 691-93.

To prevail, a plaintiff must allege "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) 'the policy is the moving force behind the constitutional violation.'" *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). While municipalities cannot be liable based on respondeat superior, *Monell,* 436 U.S. at 691, *Monell* claims are still "contingent on a violation of constitutional rights." *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) (holding that "municipal defendants cannot be held liable because no constitutional violation occurred"). "*Monell* claims thus require a plaintiff to show an underlying constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).

Again, contrary to Defendants' argument, the FAC explicitly alleges that the *Monell* claim is based on the underlying First and Fourth Amendment constitutional violations committed by SDPD officers and incorporates the prior allegations in the FAC. (Dkt. No. 7, FAC ¶¶ 100-01.) To the extent Defendants are challenging the sufficiency of the allegations in the first four causes of action asserting constitutional violations by Officer Defendants, they have failed to bear their burden on a motion to dismiss showing how each cause of action fails to state a claim. *See Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1194 (S.D. Cal. 2021) ("On a motion to dismiss, it is the defendant's burden to demonstrate that plaintiff has failed to state a claim.") (citing cases); *see also Word Aflame Tabernacle, Inc. v. City of La Habra Heights*, Case No. EDCV 20-9899 JGB (KKx), 2022 WL 22879568, at *7 (C.D. Cal. Jan. 26, 2022) (declining to address sufficiency of the complaint where the defendants failed to address how each cause of action fails to state a claim). Nonetheless, at the hearing, Defendants conceded that the first four causes of action have been sufficiently alleged. Accordingly,

the Court DENIES their motion to dismiss on Plaintiffs' failure to allege an underlying constitutional violation.

Next, Defendants argue that Plaintiffs' *Monell* claim fails to allege the City's deliberate indifference or plead a pattern of similar misconduct. (Dkt. No. 9-1, Opp. ¶ 16.) In response, Plaintiffs contend that the FAC alleges the City had notice of prior, similar misconduct from a number of sources. (Dkt. No. 11 at 21 (citing Dkt. No. 7, FAC ¶¶ 45-63).) Because the City failed to correct these known problems, Plaintiffs allege the City's policies amount to deliberate indifference. (*Id.* at 21-22.)

To allege that the City's policies amount to deliberate indifference requires "proof that a [municipality] disregarded a known or obvious consequence of [its] action." *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997) (citations omitted); *see also Hyun Ju Park*, 952 F.3d at 1141 ("When, as here, a plaintiff pursues liability based on a failure to act, she must allege that the municipality exhibited deliberate indifference to the violation of her federally protected rights.") (citing *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1143 (9th Cir. 2012)). A plaintiff alleging deliberate indifference can survive a Rule 12(b)(6) challenge if he or she alleges the municipality has engaged in a pattern of prior, similar violations of federally protected rights of which it had actual or constructive notice. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference . . . ."); *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (reversing dismissal where plaintiff "specifically allege[s] numerous incidents" of prior, similar incidents of excessive force and the defendant was provided notice of all these incidents); *Bagos v. Vallejo*, No. 2:20-cv-00185-KJM-AC, 2020 WL 6043949, at *5-6 (E.D. Cal. Oct. 13, 2020) ("[p]rior incidents involving lawsuits alone, even those which do not result in a finding or admission of wrongdoing, can be sufficient for *Monell* liability purposes in the face of a motion to dismiss."); *Villa*

*v. Cnty. of San Diego,* Case No.: 20-CV-537-CAB-NLS, 2020 WL 5535384, at *3-4 (S.D. Cal. Sept. 15, 2020) (denying motion to dismiss *Monell* claim of policy and custom and failure to train claim as the plaintiff referenced federal investigations, citizen complaints and lawsuits against the County that include similar allegations of misconduct).

The FAC has sufficiently alleged that SDPD Bike Team officers have engaged in prior, similar violations of excessive force and the City had actual or constructive notice. For instance, the FAC points to an investigation and report by the San Diego County Grand Jury for 2024-2025 report documenting public concerns about force incidents between the Bike Team and citizens. (*Id.* ¶¶ 45-46.) This 2024-25 Grand Jury report provided the City with notice about the Bike Team's use of force while patrolling the Gaslamp.

In addition, Plaintiffs set forth a September 2024 news report about SDPD officers on the Bike Team who rushed and took a man down to the ground, then dragged him and handcuffed him and later the witness stated he could not identify the man that was taken down as being one involved in the original fight. (*Id.* ¶ 47.) The FAC also alleges on August 19, 2024, in a local report, a SDPD Bike Team officer was pushing people and using pepper spray despite compliance by the people. (*Id.* ¶ 59.) These two prior incidents put the City on actual or constructive notice of Bike Team officers' use of excessive force.

Finally, Plaintiffs rely on well-documented knowledge in law-enforcement training, litigation and public discourse of the substantial risk of asphyxia, serious injury or death due to prone restraint body-weight compression and knee pressure on the back of a prone person. (*Id.* ¶¶ 50-53.) For instance, the George Floyd death in 2020 highlighted the dangers of prone restraint, body-weight compression. (*Id.* ¶ 50.) These dangers have also been noted in law-enforcement training materials, litigation and public reporting

since at least the 1990's. (*Id.* ¶ 51.) Plaintiffs also point to a 2003 Ninth Circuit case, *Drummond ex re. Drummond v. City of Anaheim*, 343 F.3d 1052, 1061-62 (9th Cir. 2003), where the court held that "kneeling on the back and neck of a compliant detainee, and pressing the weight of two officers' bodies on him even after he complained that he was choking and in need of air violates clearly established law, and that reasonable officers would have been aware that such was the case." (*Id.* ¶ 52.) Last, the City was on notice, in 2021, when California lawmakers passed Assembly Bill ("AB") 490 which amended Government Code section 7286.5 to prohibit law enforcement agencies from authorizing techniques or transport methods involving a substantial risk of positional asphyxia, including pressure or body weight unreasonably applied against a restrained person's neck, torso or back without reasonable monitoring. (*Id.* ¶ 53.) Considering the Grand Jury report, the two news reports of excessive force by Bike Team officers in August and September 2024, and knowledge of the dangers of positional asphyxia from George Floyd's death in 2020, the *Drummond case* in 2023, and passage of AB 490 in 2021, the FAC has sufficiently alleged that the City was on actual or constructive notice of the Bike Team officer's prior use of excessive force. Therefore, the Court DENIES Defendants' motion to dismiss the *Monell* claim based on excessive force.

The Court points out that the FAC refers to other sources to support prior, similar incidents of police conduct violative of citizen's constitutional rights, they do not support the *Monell* claim in this case. The Commission on Police Practices' October 2024 *Independent Civilian Audit of San Diego Police Department Complaint Investigations* for 2020-2023 found significant deficiencies in SDPD's force-related practices and investigations such as failing to consider whether force was reasonably necessary, failing to consider de-escalation prior to using force and failing to intervene when unnecessary force was being used by fellow officers. (*Id.* ¶ 60.) However, this report is not specific to Bike Team officers' conduct and does not sufficiently allege that the City had notice

regarding deficiencies in its policies regarding the Bike Team officers' use of force. Plaintiffs also refer to federal court filings regarding an incident where a person was confronted by a Bike Team officer with a drawn firearm, was ordered to the ground and subject to knee pressure while prone resulting in serious injuries. (*Id.* ¶ 48.) But, the FAC does not provide any specific facts concerning this federal case and does not allege the relevant year, and therefore, not supportive of the *Monell* claim. Last, Plaintiffs point to SDPD's internal affairs record which allegedly reveals repeated findings within SDPD's own disciplinary system of excessive force, unlawful arrests and failures to intervene. (*Id.* ¶ 49.) However, Plaintiffs do not claim that the internal affairs records relate to the Bike Team officers' conduct, and thus, are not relevant to show similar prior incidents of excessive force by the Bike Team.

Next, as to the *Monell* claim based on false arrest/unlawful seizure, Plaintiffs only point to the September 2024 news report discussed above about an alleged false arrest, (*id.* ¶ 47), yet, one similar prior incident through a news report does not plausibly allege a *pattern* of prior, similar violations sufficient to place the City on actual or constructive knowledge of the Bike Team officer's unlawful seizure/false arrest of Mr. Medina. *See Connick,* 563 U.S. at 62 ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference . . . ."); *see e.g., Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (one incident cannot establish a practice). Therefore, the Court GRANTS Defendants' motion to dismiss the *Monell* claim based on false arrest/unlawful seizure.

Furthermore, none of the alleged prior similar incidents concern violations of the First Amendment right to be free from interference with recording by SDPD Bike Team officers; therefore, Plaintiffs have not plausibly alleged the City's policy of interfering and retaliating against citizens who observe, criticize or attempt to record police activity amounts to deliberate indifference to Ms. Urbino Viveros' constitutional rights. The

Court GRANTS Defendants' motion to dismiss the *Monell* claim based on the First Amendment.

In conclusion, the Court DENIES Defendants' motion to dismiss the *Monell* claim as to excessive force and GRANTS Defendant's motion to dismiss the *Monell* claim based on false arrest/unlawful seizure and the First Amendment.

**D. Supervisory Liability – Sixth Cause of Action**

Defendants assert that the supervisory liability claim against Defendant Chief of Police Wahl fails to state a claim because Plaintiffs have not alleged he was personally involved in the alleged constitutional violation. (Dkt. No. 9-1 at 5-6.) Plaintiffs respond that they have alleged supervisory liability based on the alternate theory that there is a causal connection between Defendant Wahl's wrongful conduct and the alleged constitutional violation. (Dkt. No. 11 at 17-20.)

A defendant may be held liable as a supervisor under section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). If a supervisory official is not directly involved in the allegedly unconstitutional conduct, then "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). The causal connection can be established if the supervisor "knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).

The FAC alleges that Chief of Police Wahl "was a final policymaker and exercised supervisory authority over SDPD operations, officer training, use-of-force and restraint policies, post-incident review, discipline, corrective action, and downtown bicycle and Gaslamp-area enforcement practices." (Dkt. No. 7, FAC ¶ 125.) Plaintiffs claim that Defendant Wahl knew or should have known about the dangers of prone restraint, positional asphyxia, stacked body-weight compression and failures to intervene in the enforcement operations of the SDPD. (*Id.* ¶ 126.) He also knew that the Bike Team officer who patrol the Gaslamp district would encounter crowded nightlife conditions, intoxicated patrons, and civilians recording police activity and where the use of unconstitutional force and retaliation were foreseeable. (*Id.*) Moreover, despite the passage of AB 490 which amended Government code section 7286.5, Wahl did not revise SDPD policies in line with section 7286.5. (*Id.* ¶¶ 53, 127.) Plaintiffs further claim that Wahl knew or should have known that SDPD's training and supervisory practices were deficient due to its limited training regarding positional asphyxia and prone-restraint risks. (*Id.* ¶ 128.) For instance, its training practices failed to provide training on recovery-position requirements, body-weight compression, and differentiating between actual resistance with distress or involuntary movement and failed to ensure adequate intervention by officers who see officers using excessive force. (*Id.*)

Plaintiffs also claim Defendant Wahl was put on notice about the Bike Team's aggressive takedowns, force against persons on the ground, and confrontations with individuals attempting to record police activity. (*Id.* ¶ 129.) Plaintiffs rely on the same sources of reports, audits, and news report for the *Monell* claim to allege that Chief Wahl, the Bike Team officers' supervisor, was aware that his Bike Team officers were engaged in conduct violative of the First and Fourth Amendments and it was reasonably foreseeable that his failure to act would lead to violations of Plaintiffs' constitutional rights. For the same reasons explained above, the Court concludes that the FAC has

plausibly alleged that Chief Wahl was aware of prior incidents of alleged excessive force by his Bike Team officers but not as to false arrest/unlawful seizure and retaliation for recording police activity.

Despite being on notice of these incidents of excessive force and deficiencies in SDPD policies, Plaintiffs claim Wahl failed to revise SDPD's policies to address prone-restraint and positional-asphyxia risks and failed to implement adequate corrective training concerning proportional force, recovery positions, and intervention. (*Id.* ¶ 130.) Further, they claim that Wahl failed to provide meaningful supervisory review and failed to discipline officers using aggressive force in the Gaslamp and failed to take steps to mitigate the obvious risk that officers would violate the constitutional rights of the public. (*Id.*)

Accepting these allegations as true and drawing all reasonable inferences in favor of Plaintiffs, the Court concludes that they have plausibly alleged that Chief Wahl was aware of deficiencies in the Bike Team officers' use of force, officer training related to that use of force, disciplining officers using aggressive force, and the inadequate intervention by officers. As such, his failure to act in the face of known deficiencies and known risks amounts to reckless disregard of the constitutional rights of Mr. Medina and Ms. Urbino Viveros and acquiescence in the unconstitutional conduct. Accordingly, the Court DENIES Defendants' motion to dismiss the supervisory liability cause of action concerning excessive force against Mr. Medina and Ms. Urbina Viveros and GRANTS their motion to dismiss the supervisory liability claim concerning false arrest/unlawful seizure against Mr. Medina and retaliation claim against Ms. Urbina Viveros.

**E. Bane Act – Seventh Cause of Action**

Defendants claim that Plaintiffs summarily allege threats were made by SDPD officers but do not describe the alleged threats and the other alleged acts are merely formulaic recitations of the elements of a Bane Act claim. (Dkt. No. 9-1 at 9.) Plaintiffs

respond that their Bane Act claim alleges actual violence and coercive force. (Dkt. No. 11 at 22.)

The Bane Act provides a private cause of action against anyone who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California." Cal. Civil Code § 52.1(b) & (c); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (the Bane Act "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'"). To state a claim under the Bane Act, Plaintiffs must allege "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).

In this case, the Bane Act claim alleges violations of the First Amendment right to record policy activity without retaliation and Fourth Amendment right to be free from an false arrest/unreasonable seizure and excessive force. (Dkt. No. 7, FAC ¶ 134.) Specifically, the FAC alleges that Defendants interfered with those rights by threats, intimidation, coercion and violence when they used force to rush, tackle, pin, punch, knee, pepper spray and arrest Mr. Medina and used force to shove Ms. Urbina Viveros to the ground in order to prevent her from recording police activity. (*Id.* ¶ 136.) Contrary to Defendant's argument that Plaintiffs only summarily alleges a threat by Defendants, Plaintiffs have sufficiently alleged Defendants interfered with Plaintiffs rights by intimidation, coercion and violence. Thus, the Court DENIES Defendant's motion to dismiss the Bane Act cause of action.

/ / /

**F. Intentional Infliction of Emotional Distress – Eighth Cause of Action**

Finally, Defendants assert that Plaintiffs failed to plead all elements to support a claim for intentional infliction of emotional distress. (Dkt. No. 9-1, Opp. ¶ 21.) Plaintiffs oppose. (Dkt. No. 11 at 23-24.)

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal citations and quotation marks omitted). On the first factor, conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community" and the defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result." *Id.* at 1050-51 (internal quotation marks omitted). "At the pleading stage, Plaintiff need only plead sufficient facts to raise an inference of the requisite intent or reckless disregard." *Valle v. Morgado,* Case No. 21-cv-05636-EMC, 2021 WL 5507180, at *8 (N.D. Cal. Nov. 24, 2021) (citing *Duenez v. City of Manteca*, No. CIV. S-11-1820 LKK, 2012 WL 4359229, at *15 (E.D. Cal. Feb. 23, 2012)).

The IIED cause of action incorporates by reference the conduct underlying the unlawful seizure, excessive force and retaliation claim, (Dkt. No. 7, FAC ¶ 140), providing Defendants with notice of the conduct underlying the IIED claim. *See Khan v. 7-Eleven, Inc*., EDCV 14-00522 DMG (PLAx), 2014 WL 12601018, at *5 (C.D. Cal. Nov. 3, 2014) (incorporating by reference prior allegations in the complaint sufficient to allege reckless disregard element of IIED claim). Further, courts have recognized that use of excessive force may constitute outrageous conduct for purposes of an intentional infliction of emotional distress claim. *See Blankenhorn v. City of Orange*, 485 F.3d 463,

487 n.17 (9th Cir. 2006); *McFarland v. City of Clovis*, CASE NO. 1:15–CV–1530 AWI SMS, 2017 WL 1348934, at *18 (E.D. Cal. Apr. 10, 2017) ("courts have recognized that it is possible for excessive force to be sufficiently outrageous for purposes of an IIED claim.") (citing cases).

Here, Plaintiffs' intentional infliction of emotional distress is based on Officer McLemore and Doe Defendants' use of excessive force against Mr. Medina and Ms. Urbina Viveros. (Dkt. No. 7, FAC ¶ 141.) They claim Defendants' conduct was extreme and outrageous when they violently tackled, pinned, punched, kneed, sprayed, and arrested Mr. Medina despite his compliance and lack of threat and violently shoved Urbina Viveros to the ground to stop her from videotaping police conduct in public. (Dkt. No. 7, FAC ¶ 141.) Next, they contend that Defendants acted intentionally or with reckless disregard and caused Plaintiffs severe emotional distress. (*Id.* ¶ 142.) Further, Plaintiffs maintain that severe emotional distress they suffered was caused by Defendants' outrageous conduct. (*Id.* ¶ 143.) Taking these allegations as true, Plaintiffs plead facts to support a claim for intentional infliction of emotional distress. *See Hughes*, 46 Cal. 4th at 1050. Thus, the Court DENIES Defendants' motion to dismiss the IIED cause of action.

**G. Leave to Amend**

To the extent the Court dismisses any causes of action, Plaintiffs seek leave to amend. (*See* Dkt. No. 11 at 24.) Because leave to amend should be freely granted and would not be futile, the Court GRANTS Plaintiff's request for leave to amend. *See Chubb*, 710 F.3d at 956.

/ / /

/ / /

/ / /

/ / /

**Conclusion**

Based on the above, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss with leave to amend. Plaintiffs may file a second amended complaint within 21 days of the filing of this order.

IT IS SO ORDERED.

Dated: July 20, 2026

Hon. Gonzalo P. Curiel
United States District Judge