UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

GEORGE MEDINA, an individual; and ARACELI URBINA VIVEROS, an individual,

Plaintiffs,

v.

CITY OF SAN DIEGO, a municipality; OFFICER NOAH MCLEMORE; SCOTT WAHL, an individual, and DOES 1-50, inclusive,

Defendants.

Case No.: 26-cv-2255-GPC-MSB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

**[Dkt. No. 17.]**

Before the Court is Defendants' motion to dismiss the second amended complaint. (Dkt. No. 17.) An opposition and reply were filed. (Dkt. Nos. 19, 20.) Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss.

**Background**

The case was removed to this Court on April 9, 2026. (Dkt. No. 1.) On May 7, 2026, Plaintiffs George Medina ("Mr. Medina") and Araceli Urbina Viveros ("Ms.

Urbina Viveros") filed a first amended complaint pursuant to 42 U.S.C. § 1983 against Defendants City of San Diego ("the City"), Officer Noah McLemore ("McLemore"), Scott Wahl ("Wahl" or "Chief Wahl"), Chief of the San Diego Police Department ("SDPD"), and Doe Defendants 1-50 for violations of their constitutional rights and related state law claims. (Dkt. No. 7, FAC.) On July 20, 2026, the Court granted in part and denied in part Defendants' motion to dismiss with leave to amend. (Dkt. No. 14.) On August 10, 2026, Plaintiff filed the operative second amended complaint ("SAC") against the City, Officer McLemore, Chief Wahl and eleven named officers involved in the incident and include Officer Andres Perez Quintero, (SD7858); Officer Robert "Dalton" Trousas (SD7949); Officer Austin Paredes (SD7816); Officer Addison Armstrong (SD1790); Officer Angela Bull (6817); Officer Michael Giddens (SD6431); Officer Edgar Garcia (SD7657); Officer Arrifa Luis (SD1726); Officer Zane Sisneros (SD7491); Officer Adam Devor (SD7245); and Officer Juan Ponce (SD6859) (collectively "Officer Defendants") alleging violations of their constitutional rights and related state law causes of action. (Dkt. No. 15, SAC ¶ 5.) The incident involved officers of the Gaslamp Enforcement Team ("Bike Team"), a specialized bicycle enforcement unit, whose mission is to "maintain peace and order," "ensure the safety and security of visitors," and provide "quality police services." (*Id.* ¶ 48.)

**A. George Medina**

Shortly after 12:00 a.m. on July 19, 2025, Mr. Medina was walking in the Gaslamp Quarter and briefly stopped to speak with a friend on the sidewalk. (Dkt. No. 15, SAC ¶ 17.) As he was leaving the area, Doe Defendants 1-3, without warning or commands, rushed and violently tackled Plaintiff to the ground. (Id. ¶¶ 18, 19.) He fell face-first

onto the ground and within seconds, additional Involved Officer Defendants[1] came upon him, forming a circle around his body as he lay pinned down. (*Id.* ¶ 20.) Mr. Medina did not fight back, did not try to flee and did not strike or threaten any officer. (*Id.* ¶ 21.) Even though he complied, the situation escalated and Doe Defendant 4 struck him in the face. (*Id.* ¶¶ 22, 23.)

Then Doe Defendants 1-3 flipped Mr. Medina onto his stomach and Doe Defendant 5 pressed his knee directly into his back and pressed him down in the ground in a prone-restraint position. (*Id.* ¶ 24.) Doe Defendant 6 then climbed onto his back and pressed both of his knees into Mr. Medina's back at the same time. (*Id.* ¶ 25.) Doe Defendants 7 and 8 arrived and used their bikes to form a barrier around the scene while force was being applied. (*Id.* ¶ 26.) Even though Mr. Medina was not moving or actively resisting, the Involved Officer Defendants remained on top of him driving their knees and body weight into his back while face down. (*Id.*) Even though he was immobilized underneath multiple Involved Officer Defendants, he was sprayed with chemical irritants including pepper spray by Doe Defendant 9. (*Id.* ¶ 27.) The body weight of the Involved Officer Defendants caused a burning sensation across Mr. Medina's face and into his eyes and he struggled to breathe. (*Id.* ¶¶ 27, 28.) As the scene became chaotic, Doe Defendants 10 and 11 used pepper spray towards the civilians who had gathered nearby and one woman was pushed to the ground. (*Id.* ¶ 29.) The Involved Officer Defendants eventually placed Mr. Medina under arrest and transported him from the scene. (*Id.* ¶ 31.) He required immediate hospitalization due to the injuries inflicted by them. (*Id.*) During the incident, numerous officers and supervisory officers, including Doe Defendants 14 through 16, stood by and watched the escalation of force despite Mr.

---

[1] The SAC explains that "Involved Officer Defendants" refer to Officer Defendants and DOES 1-50. (Dkt. No. 15, SAC ¶ 13.)

Medina's inability to actively resist any of the Involved Officer Defendants' commands. (*Id.* ¶ 32.) Mr. Medina claims the Involved Officer Defendants, including other supervisory officers, failed to ensure proper force was used during the incident; instead, they escalated the use of force in contravention to SDPD's training and California's POST[2] standards. (*Id.*) Criminal charges were filed against Mr. Mr. Medina but they were later dismissed by the District Attorney. (*Id.* ¶ 33.) He claims he suffered serious physical injuries, including broken ribs, facial and bodily pain, pepper-spray exposure, difficulty breathing, hospitalization, humiliation, emotional distress and violation of his constitutional rights. (*Id.* ¶ 34.) He asserts he continues to experience physical and psychological effects from the assault. (*Id.*)

**B. Araceli Urbina Viveros**

During the incident, Ms. Urbina Viveros witnessed the Involved Officer Defendants tackle Mr. Medina to the ground. (*Id.* ¶ 35.) She saw Involved Officer Defendants striking Mr. Medina and forcing his head into the pavement even though he appeared restrained and compliant. (*Id.* ¶ 36.) Shocked by what she was seeing, she took out her phone to record. (*Id.*) She did not aggressively approach any Involved Officer Defendants, did not touch any Involved Officer Defendants, did not touch Mr. Medina, did not obstruct any Involved Officer Defendants' movement and did not interfere with any police activity. (*Id.* ¶ 37.) As she began to record the incident, Doe Defendant 12 forcefully shoved her to the ground which caused her phone to fall out of her hand and sent her palms and knees onto the pavement. (*Id.* ¶ 39.) When she tried to stand, Doe Defendant 13 pushed her back down again sending the message that she could not record the incident. (*Id.* ¶ 40.) Meanwhile, Doe Defendants 10 and 11 used pepper spray toward civilians in the area which further escalated the situation. (*Id.* ¶ 41.) Ms. Urbina

[2] Peace Officer Standards and Training.

Viveros suffered bruising to her palms, arms and feet, physical pain and lasting emotional trauma. (*Id.* ¶ 43.) Plaintiffs also allege that Doe Defendants 17-50 are additional SDPD officers, supervisors, and policymaking officials who were involved in the incident. (*Id.* ¶ 9(k).)

On the first and second causes of action, Mr. Medina alleges claims of unlawful seizure/false arrest and excessive force under the Fourth Amendment against Officer Defendants and Does 1-50. (*Id.* ¶¶ 81-93.) On the third and fourth causes of action, Ms. Urbina Viveros alleges claims of excessive force under the Fourth Amendment and retaliation/interference under the First Amendment against Officer Defendants and Does 1-50. (*Id.* ¶¶ 94-111.) On the fifth and sixth causes of action, both Mr. Medina and Ms. Urbina Viveros allege *Monell*[3] liability against the City of San Diego and supervisory liability against Defendant Chief of Police Wahl under 42 U.S.C. § 1983. (*Id.* ¶¶ 112-153.) On the seventh and eighth causes of action, they also allege violations of the Bane Act pursuant to California Civil Code section 52.1 and intentional infliction of emotional distress ("IIED") against all Defendants. (*Id.* ¶¶ 154-68.) On August 24, 2026, all Defendants filed the instant motion to dismiss the second amended complaint which is fully briefed. (Dkt. Nos. 17, 19, 20.)

## Discussion

### A. Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires the Court to dismiss claims that fail to establish a cognizable legal theory or do not allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). Under Rule

[3] *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

8(a)(2) a complaint must contain "a short and plain statement of the claim which entitles the pleader to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but it must provide allegations that raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. While the plausibility standard is not a probability test, it does require more than a mere possibility the defendant acted unlawfully. *Id.* at 556. "When evaluating a Rule 12(b)(6) motion, the Court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (citation omitted).

**B. Newly Named Individual Officer Defendants**

Defendant argues that the eleven newly named individual officers must be dismissed because Plaintiffs merely names them and do not provide any factual

allegations about any of their conduct in the alleged incident. (Dkt. No. 17-1 at 4.[4]) Plaintiffs assert they identified the names of the eleven officers from SDPD's Call For Service record which identified these officers as being involved in the incident and they have alleged the conduct of each Doe Defendant. (Dkt. No. 19 at 16-20.) Because the identification of each Doe Defendant to a named individual officer is within Defendants' exclusive possession, at this stage, Plaintiffs have plausibly alleged the conduct of the eleven named Officer Defendants. (Dkt. No. 19 at 16-20.)

Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The "short and plain statement" required by Rule 8 "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 346 (2005) (internal quotation marks omitted); *Merritt v. Countrywide Fin. Corp*., 759 F.3d 1023, 1033 (9th Cir. 2014) (under Rule 8, "a plaintiff need only plead sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively, and the factual allegations that are taken as true must plausibly suggest an entitlement to relief") (internal quotation marks omitted).

The use of "Doe" defendants to identify a defendant is permissible as long as discovery will reveal the identity of these unknown defendants. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999). Here, Plaintiffs have alleged the conduct of Doe Defendants 1-16. (Dkt. No. 15, SAC ¶¶ 9(a)-(j), 18-32, 39-41.) Further, Plaintiffs have identified the names of the Officer Defendants involved in the incident from the SDPD's Call for Service record. (*Id.* ¶¶ 5, 6.) They also claim that the identities of the Doe Defendants will be ascertained

---

[4] Page numbers are based on the CM/ECF pagination.

through discovery, through the body-worn camera footage, arrest reports and personnel roster for the unit and shift deployed at the time of the alleged incident. (*Id.* ¶ 11.)

The Court concludes that Plaintiffs have provided fair notice to the eleven individual Officer Defendants as to their alleged conduct by identifying the conduct of each Doe Defendant. Defendants do not deny these individual Officer Defendants were involved in the incident. Since they were involved in the alleged incident, they know what conduct they were engaged in. Because the conduct of each Doe Defendant is in the possession and control of Defendants' body-worn camera footage and documents, discovery will likely reveal which individual Officer Defendant engaged in which conduct alleged against Doe Defendants. Accordingly, the Court DENIES Defendants' motion to dismiss the eleven named Officer Defendants. *See e.g., Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) ("[W]e relax pleading requirements where the relevant facts are known only to the defendant."); *Savage v. City of Corona*, Case No. EDCV 24-97-KK-SPx, 2024 WL 2104595, at * 3 (C.D. Cal. Apr. 1, 2024) (rejecting defendant argument that the complaint failed to provide Doe Defendants with fair notice of the claims against them because "the Complaint identifies defendants Does 1 through 6 as the Corona Police Department officers involved in the December 9, 2022 incident.").

**C. Doe Defendants 7, 8 and 17-50.**

Defendants specifically dispute the allegations as it relates to Doe Defendants 7, 8, and 17-50. As to Doe Defendants 7 and 8, they argue that the SAC fails to allege how they personally violated Plaintiffs' constitutional rights. (Dkt. No. 17-1, Opp. ¶ 9.) As to Doe Defendants 17-50, they contend that Plaintiffs have failed to attribute any conduct to Does 17-50. (*Id.*) Plaintiffs oppose. (Dkt. No. 19 at 17-18.)

Here, the SAC alleges the conduct of Doe Defendants 7 and 8 as the Bike Team officers who arrived on the scene and situated their bicycles to form a barrier around the scene while force was being applied to Mr. Medina. (Dkt. No. 15, SAC ¶¶ 9(e), 26.) It

also alleges that "each of the Officer Defendants personally participated in the seizure and use of force against Plaintiffs, and/or observed that seizure and use of force with a realistic opportunity to intervene and failed to do so . . . ." (*Id.* ¶ 13.)

Officers on the scene who are aware of another officer's use of excessive force and fail to intervene are liable under § 1983 liability. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). Here, Plaintiffs have alleged that Doe Defendants 7 and 8 participated in securing the scene during the alleged excessive force being perpetrated against Mr. Medina and failed to intervene. Plaintiff have alleged the personal participation in the alleged conduct of Doe Defendants 7 and 8. Thus, the Court DENIES dismissal of Doe Defendants 7 and 8 from the SAC.

As to Doe Defendants 17-50, Plaintiffs explain they are residual designations of additional officers, supervisors and policymaking officials that they cannot currently identify and they allege they will designate their true names once ascertained during discovery. (Dkt. No. 19 at 18 (citing Dkt. No. 15, SAC ¶¶ 9, 11).) Plaintiffs ask if the Court dismisses Does 17-50, it be without prejudice. Despite given the opportunity, because Plaintiffs have failed to allege facts as to Doe Defendants 17-50, the Court GRANTS dismissal of Doe Defendants 17-50 without prejudice. *See Wakefield*, 177 F.3d at 1163.

**D. *Monell* Liability – Fifth Cause of Action Against the City**

Local governments "can be sued directly under [section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). While municipalities, their agencies and their supervisory personnel cannot be held liable under § 1983 on any theory of respondeat

superior or vicarious liability, they can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs. *Id.* at 691-93.

To prevail, a plaintiff must allege "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) 'the policy is the moving force behind the constitutional violation.'" *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).

To allege that the City's policies amount to deliberate indifference requires "proof that a [municipality] disregarded a known or obvious consequence of [its] action." *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997) (citations omitted); *see also Hyun Ju Park*, 952 F.3d at 1141 ("When, as here, a plaintiff pursues liability based on a failure to act, she must allege that the municipality exhibited deliberate indifference to the violation of her federally protected rights.") (citing *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1143 (9th Cir. 2012)). A plaintiff alleging deliberate indifference can survive a Rule 12(b)(6) challenge if he or she alleges the municipality has engaged in a pattern of prior, similar violations of federally protected rights of which it had actual or constructive notice. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference . . . ."); *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (reversing dismissal where plaintiff "specifically allege[s] numerous incidents" of prior, similar incidents of excessive force and the defendant was provided notice of all these incidents); *Bagos v. Vallejo*, No. 2:20-cv-00185-KJM-AC, 2020 WL 6043949, at *5-6 (E.D. Cal. Oct. 13, 2020) ("[p]rior incidents involving lawsuits alone, even those which do not result in a finding or admission of wrongdoing, can be sufficient for *Monell* liability purposes in the face of a motion to dismiss."); *Villa v. Cnty. of San Diego,* Case No.: 20-CV-537-CAB-NLS, 2020 WL 5535384, at *3-4

(S.D. Cal. Sept. 15, 2020) (denying motion to dismiss *Monell* claim of policy and custom and failure to train claim as the plaintiff referenced federal investigations, citizen complaints and lawsuits against the County that include similar allegations of misconduct).

In the prior order, the Court denied dismissal of the *Monell* claim based on excessive force as Plaintiffs had alleged a violation of their constitutional rights and had alleged the City's deliberate indifference to Plaintiffs' constitutional rights by pleading a pattern of prior, similar misconduct of which the City had actual or constructive notice. (Dkt. No. 14 at 11-13.) The Court concluded that the 2024-25 Grand Jury report, the two news reports of excessive force by Bike Team officers in August and September 2024, well-documented knowledge of the dangers of positional asphyxia, including from George Floyd's death in 2020, the Ninth Circuit *Drummond*[5] case in 2023, and passage of AB 490 in 2021, had provided the City with actual or constructive notice of the Bike Team officer's prior use of excessive force. (*Id.* at 13.)

However, the Court granted dismissal of the *Monell* claim based on false arrest/unlawful seizure and First Amendment violations. (*Id.* at 14-15.) On the false arrest/unlawful seizure issue, the Court concluded that Plaintiffs had not demonstrated a pattern of prior, similar constitutional violations because they alleged only one prior incident. (*Id.* at 14.) Similarly, on the First Amendment issue, the Court dismissed the *Monell* claim because Plaintiffs failed to allege any prior, similar incidents providing the City with actual or constructive notice of First Amendment violations by its Bike Team officers. (*Id.* at 14-15.)

In their motion, Defendants reargue certain issues that were already resolved in the Court's prior ruling and therefore the Court need not consider them under the law of the

---

[5] *Drummond ex re. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003),

case doctrine.[6] (*See* Dkt. No. 17-1, Opp. ¶¶ 16, 17, 19, 21.) Defendants' other challenges are without merit and simply argue that the additional prior, similar incidents alleged are not enough "notice" to support deliberate indifference by the City.

In the SAC, Plaintiffs have cured the deficiencies noted in the Court's prior order. Plaintiffs bolstered its unlawful seizure/false arrest *Monell* claim alleging that in September 2024, local news report described a Gaslamp arrest video where SDPD's Bike Team rushed a man, took him to the ground, grabbed and dragged him and later handcuffed him and was later not charged. (Dkt. No. 15, SAC ¶¶ 52, 121.) The SDPD publicly defended the incident which put the City and policymakers on notice of the Bike Teams' practice of seizing and arresting persons without probable cause. (*Id.* ¶¶ 52, 53.) Further, Plaintiffs are informed and believe that a citizen's complaint about this incident was filed with the Commission on Police Practices and referred to Internal Affairs for investigation providing the City and policymakers additional notice of the unlawful seizure by Bike Team officers. (*Id.* ¶ 54.) Plaintiffs also allege another similar incident of false arrest/unlawful seizure involving Mr. Muslah Abdul-Hafeez, a well-known "cop watcher" associated with the Southeast San Diego Accountability Unit, who was ordered to the ground at gunpoint by Bike Team officers, detained for hours and cited for obstructing a peace officer but was never charged. (Dkt. No. 15, SAC ¶¶ 56, 121.) Mr. Abdul-Hafeez filed a federal complaint in this district in July 2024, *Abdul-Hafeez v. City of San Diego*, Case No. 24cv1184-RSH(DDL) (S.D. Cal.) putting the City and policymakers on notice about Bike Team Officers use of excessive force and unlawful seizures. (*Id.* ¶¶ 58, 59.) Lawsuits involving similar wrongful conduct by officers are sufficient to support *Monell* liability on a motion to dismiss. *See Bagos*, 2020 WL

---

[6] The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).

6043949, at *5-6 ("[p]rior incidents involving lawsuits alone, even those which do not result in a finding or admission of wrongdoing, can be sufficient for *Monell* liability purposes in the face of a motion to dismiss."). Lastly, Plaintiffs claim, on information and belief, that SDPD internal affairs records reflect repeated findings within SDPD's own disciplinary system involving excessive force, unlawful arrests and failure to intervene and include officers assigned to the Bike Team but such information is within the exclusive possession of the City. (Dkt. No. 15, SAC ¶ 61.) Pleadings may be made on information and belief and survive a motion to dismiss challenge if the facts are within the possession and control of the defendant. *See Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.") (quoting *Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)). These additional allegations support the *Monell* claim for unlawful seizure/false arrest.

Next, Plaintiffs have also cured the *Monell* claim as it relates to the First Amendment issue by alleging three prior instances of similar conduct by Bike Team officers violating a civilian's right to observe and record. (Dkt. No. 15, SAC ¶ 123.) They include the July 2023 seizure of Mr. Abdul-Hafeez, who was ordered to the ground at gunpoint, subjected to force while prone and compliant and cited for obstruction as he tried to record Bike Team officers; on information and belief, the repeated detention and arrest of Mr. Abdul-Hafeez when he tried to document police activity; and the August 2024 reporting of a video, that SDPD publicly acknowledged, showing Bike Team officers pushing bystanders, who were observing and recording the encounter, and deploying pepper spray towards a compliant crowd. (*Id.*)

These additional allegations allege a pattern of a policy, practice or custom of unlawful seizures and First Amendment violations by Bike Team officers of which the City and policymakers were actually or constructively aware. As such, the Court DENIES Defendants' motion to dismiss the *Monell* claim.

**E. Supervisory Liability – Sixth Cause of Action**

A defendant may be held liable as a supervisor under section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). If a supervisory official is not directly involved in the allegedly unconstitutional conduct, then "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). The causal connection can be established if the supervisor "knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).

The Court previously denied dismissal of Defendant Chief Wahl as it concerned excessive force against Plaintiffs because they alleged that he was aware of "deficiencies in the Bike Teams officers' use of force, officer training related to that use of force, disciplining officers using aggressive force, and the inadequate intervention by officers." (Dkt. No. 14 at 17.) Despite his awareness, the Court found Plaintiffs alleged that Chief Wahl's failure to act in the face of known deficiencies and risks amounted to reckless disregard of the constitutional rights of Plaintiffs and acquiescence in the unconstitutional

conduct. (*Id.*) However, for the same reasons the Court dismissed the *Monell* claim based on unlawful seizure/false arrest and First Amendment violations for failing to allege a pattern of similar constitutional violations by Bike Team officers, the Court also granted dismissal the supervisory liability claim against Chief Wahl. (*Id.* at 16-17.)

As discussed in the *Monell* analysis in this case, the SAC has been amplified to include additional prior, similar incidents of constitutional violations concerning unlawful seizure/false arrest and First Amendment violations and actual or constructive notice by the City and Chief Wahl, a supervisor and policymaker. (Dkt. No. 15, SAC ¶¶ 8, 53-61, 144-53.) Therefore, because the Court concludes above that Plaintiffs have sufficiently alleged the City's deliberate indifference to Plaintiffs' constitutional rights, they have also plausibly alleged Chief Wahl was also reckless or callously indifferent to the constitutional rights of Plaintiffs as it concerns their claims for false arrest/unlawful seizure and retaliation for recording police activity. *See Hernandez v. City of Beaumont*, No. EDCV 13–00967 DDP (DTBx), 2024 WL 1669990, at *5 (C.D. Cal. Apr. 28, 2014) ("The Court finds that Plaintiffs have pled sufficient facts to state plausible claims for supervisory liability and for negligent training against Coe for the same reasons their *Monell* claim is sufficient."). Accordingly, the Court DENIES Defendant's motion to dismiss the sixth cause of action for supervisory liability against Chief Wahl.

**F. Bane Act – Seventh Cause of Action**

On the Bane Act claim, Defendants argue that the SAC fails to allege threat, intimidation, or coercion and specific intent because they have failed to identify which officers had the specific intent to take any specific action and which officers engaged in threats, intimidation or coercion. (Dkt. No. 17-1, Opp. ¶¶ 23, 24.)

The Court previously denied Defendants' motion to dismiss the Bane Act claim. (Dkt. No. 14 at 17-19.) Here, Defendants' arguments are based on the failure of Plaintiffs to identify the conduct of each individual Officer Defendant. To the extent that

Plaintiffs will be given an opportunity during discovery to make that determination, the Court DENIES Defendants' motion to dismiss the Bane Act cause of action.

### G. Intentional Infliction of Emotional Distress – Eighth Cause of Action

Finally, Defendants merely contend that the IIED claim fails because Plaintiffs do not state what each individually named defendant did or that Doe Defendants engaged in conduct that amounts to the IIED. (Dkt. No. 17-1, Opp. ¶ 25.) Plaintiffs disagree. (Dkt. No. 19 at 29-30.) In the prior order, the Court denied dismissal of the IIED cause of action concluding that Plaintiffs had alleged facts to support the elements of an IIED claim. (Dkt. No. 14 at 19-20.) To the extent Defendants argue that Plaintiffs failed to allege conduct that amounts to an IIED claim, the Court applies the law of the case doctrine and adopts its prior ruling. As to whether Plaintiffs failed to state the conduct of each named individual Officer Defendant, as previously discussed, Plaintiffs will be given an opportunity during discovery to make that determination. Thus, the Court DENIES Defendants' motion to dismiss the IIED cause of action.

## Conclusion

Based on the above, the Court GRANTS in part and DENIES Defendants' motion to dismiss. Specifically, the Court GRANTS Defendants' motion to dismiss Doe Defendants 17-50 without prejudice and DENIES the motion to dismiss as to the remaining claims. The hearing set on November 6, 2026 shall be **vacated**.

IT IS SO ORDERED.

Dated: November 5, 2026

Hon. Gonzalo P. Curiel
United States District Judge